UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIANFRANCO GORGONI,

*Plaintiff,*

- against -

CHRISTO JAVACHEFF and the SMITHSONIAN INSTITUTION,

*Defendants*.

ECF CASE

CIVIL ACTION NO.

**COMPLAINT WITH JURY DEMAND**

Plaintiff Gianfranco Gorgoni ("Gorgoni"), by his attorneys, Cahill Cossu Noh & Robinson LLP, as and for his Complaint against Defendant Christo Javacheff ("Christo") and the Smithsonian Institution (the "Smithsonian") (together, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by Gorgoni to vindicate his rights as an artist in response to the wrongful actions taken by Christo and the Smithsonian to erase Gorgoni's artistic contributions from the historical record by denying him appropriate and lawful credit—despite his unchallenged copyright registration 40 years ago—for fine art photographs and images created by him, and for which Christo now claims all lawful rights and full artistic credit.

2. Gorgoni is an internationally acclaimed artist and photographer whose work has graced the walls of museums and the covers of TIME MAGAZINE, NEWSWEEK and THE NEW YORK TIMES, among many others. Gorgoni's artistic practice of documenting other artists and their creative processes, including such renowned artists as Andy Warhol, Jean-Michel Basquiat, Roy Lichtenstein, and Willem de Kooning, has received critical acclaim, and his artworks have been collected by art collectors and important institutions, including the Getty Museum. While not as financially successful as the wealthy Christo, Gorgoni is an artist who has received, and

deserves, the respect accorded to artists. This action seeks to defend those rights and to remedy Defendants' unlawful trampling of them.

3. Gorgoni seeks (a) a declaration that Gorgoni is the sole owner of copyright to a series of photographs that are the subject of this action (the "Images"), and (b) an order awarding damages and enjoining Defendants from using the Images in violation of Gorgoni's exclusive rights under the United States Copyright Act, 17 U.S.C. § 101 *et seq*. (the "Copyright Act").

**PARTIES AND JURISDICTION**

4. Gianfranco Gorgoni is an individual residing in New York, New York.

5. On information and belief, Christo Javacheff is an individual residing in New York, New York.

6. On information and belief, the Smithsonian Institution is a trust instrumentality of the United States, with a principal address of 1000 Jefferson Drive, S.W., Washington D.C. 20560.

7. The Court has personal jurisdiction over defendants under CPLR §§ 301-302. Gorgoni's claims also arise out of and relate to Defendants' contacts with New York, and the Defendants have sufficient minimum contacts with New York to permit personal jurisdiction. Further, the Smithsonian (i) engages in a persistent course of conduct in New York, (ii) expects, or should reasonably expect, that its conduct (including purchasing artworks in New York and infringing on the artwork of artists who reside in New York) would have consequences in New York, and (iii) derives substantial revenue from interstate or international commerce.

8. This Court has subject matter jurisdiction over claims arising under the copyright laws of the United States under 28 U.S.C. §§ 1331 and 1338, and over the remaining claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTS

### "RUNNING FENCE" BACKGROUND

10. From 1972 to 1976, Christo, along with his wife and artistic partner, Jeanne-Claude Javacheff ("Jeanne-Claude"), undertook to create a public art installation that was known as *Running Fence, Sonoma and Marin Counties, California* ("Running Fence").

11. Running Fence was built and removed over several weeks in September to October of 1976.

12. To finance, sponsor, and promote the Running Fence project, Christo authorized the creation of the Running Fence Corporation (the "Corporation"), an Illinois corporation.

13. Christo engaged Scott Hodes, Esq. ("Hodes") to provide legal services concerning the Corporation.

14. Hodes was the author of *What Every Artist and Collector Should Know About the Law*.

15. Hodes was also the secretary and legal counsel of the Corporation.

16. Hodes, or another attorney working at the same firm, prepared legal agreements to document the transactions concerning Christo and Running Fence.

17. Upon information and belief, neither Hodes nor any other attorney created any document stating that Christo or the Corporation would own the copyright to the Images.

18. Hodes responded to a cease-and-desist letter sent on behalf of Gorgoni and did not provide a copy of any written agreement concerning copyrights in the Images.

19. Upon information and belief, the Corporation conducted its business lawfully.

20. Upon information and belief, Christo and the Corporation filed tax returns with governmental tax authorities in accordance with then applicable law.

21. Upon information and belief, neither Christo not the Corporation recorded any payments or expenses reimbursed to Gorgoni.

**GORGONI DOCUMENTS RUNNING FENCE AS PART OF HIS ARTISTIC PRACTICE**

22. During the Running Fence installation, Christo allowed Gorgoni to document the project as part of Gorgoni's artistic practice of, in essence, making art by photographing art as it was being made by other artists.

23. Gorgoni planned to, and did, create beautiful fine art photographs that also document both the creation of Running Fence and those affected by it, including farmers, laborers, and local government officials.

24. Gorgoni took a series of photographs, including the Images that are the subject of this action, while in California.

25. Gorgoni's photographs include images of Christo and Jeanne-Claude, Running Fence in its various stages, and of related matters such as the local landscape, farmers, and other residents as well as the extensive proceedings generated by the then-controversial nature of Running Fence.

26. Gorgoni took the photographs, including the Images, with his own camera and lenses. Gorgoni purchased the film for his camera.

27. Gorgoni exerted complete control and complete artistic discretion over the photographs, including the Images, that he took and had printed by a member of his own team.

28. The Images include candid photographs, such as depictions of Christo speaking at public hearings on the project and workers assembling the installation.

29. Christo had no creative input in Gorgoni's photographs, including the Images.

30. Many of the photographs were taken when Christo was not present.

31. As such, the photographs do not qualify as "works made for hire" under the Copyright Act of 1909 or the Copyright Act of 1976.

32. Gorgoni owned and has retained the negatives.

**GORGONI GRANTS A LICENSE TO USE HIS IMAGES IN A RUNNING FENCE BOOK**

33. Following the installation of Running Fence, Christo sought to document the process of creating Running Fence in a book titled *Christo: Running Fence* (the "First Running Fence Book").

34. Christo requested that Gorgoni provide the publisher, Harry N. Abrams, Inc. ("Abrams Publishing"), with the photographs that Gorgoni took, including the Images, for reproduction in the First Running Fence Book.

35. Gorgoni agreed to (a) provide physical copies of photographs to Abrams Publishing and (b) grant Abrams Publishing a license to reprint the photographs in the First Running Fence Book, subject to the acknowledgement by Christo and Abrams Publishing of Gorgoni's copyright to the photographs.

36. Christo agreed that Gorgoni was the copyright owner of the photographs, including the Images.

37. Abrams Publishing memorialized in writing the terms of Gorgoni's license to Abrams Publishing and Gorgoni's ownership of the copyright to the photographs, including the Images.

38. At no time did Gorgoni transfer ownership of his copyright to the Images to Christo, the Corporation, or to anyone else.

39. The First Running Fence Book was published by Abrams Publishing in 1978.

40. Gorgoni registered his copyright (No. Ju 14911) in the Images that were contained in the First Running Fence Book with the U.S. Copyright Office, effective February 11, 1977.

41. Christo was credited as "Designer" of the First Running Fence Book.

42. The First Running Fence Book identified Gorgoni as the copyright owner of his photographs, including the Images.

43. Upon information and belief, Christo knew that the First Running Fence Book identified Gorgoni as the copyright owner of the Images.

44. At no time did Christo or the Corporation challenge or seek to invalidate Gorgoni's copyright registration of the Images that were contained in the First Running Fence Book.

45. At no time did Christo or the Corporation register a copyright in the Images taken by Gorgoni.

**CHRISTO SELLS THE RUNNING FENCE COLLECTION TO THE SMITHSONIAN WITHOUT NOTIFYING GORGONI, AND THE SMITHSONIAN MAKES NO INQUIRY INTO GORGONI'S RIGHTS**

46. Upon information and belief, in or about 2007, Christo sold a series of materials to the Smithsonian related to Running Fence (the "Running Fence Collection").

47. Upon information and belief, physical copies of the Images were included by Christo as part of the Running Fence Collection.

48. Upon information and belief, Christo (and Jeanne-Claude) told the Smithsonian that they were the sole owners of the copyright to every item in the Running Fence Collection, including the Images.

49. The Smithsonian did not ask Gorgoni when acquiring the Running Fence Collection if he owned the copyrights to the Images.

50. Upon information and belief, the Smithsonian did not inquire of anyone not associated with Christo as to who owned the copyrights to the Images, beyond accepting his representation that he was the owner.

51. Upon information and belief, the Smithsonian did not make any provenance inquiry into the Images when acquiring the Running Fence Collection.

52. Upon information and belief, the Smithsonian did not search the United States Copyright Office records to determine whether someone other than Christo owned the copyright to any part of the Running Fence Collection, including the Images.

53. Upon information and belief, the Smithsonian did not make any other inquiry concerning who owned any intellectual property in the Images when acquiring the Running Fence Collection.

54. Upon information and belief, the Smithsonian failed to do any due diligence into Gorgoni's ownership of copyright to Images.

55. The Smithsonian had the First Running Fence Book, which references the copyrights of Gorgoni.

56. Upon information and belief, the Smithsonian failed to comply with its acquisition policies when it purported to purchase the Running Fence Collection.

57. Had the Smithsonian conducted appropriate research into the items in the Running Fence Collection, such as opening up the First Running Fence Book to page 8, the Smithsonian would have been on notice of Gorgoni's copyright ownership to the Images.

58. The Smithsonian's apparent failure to make reasonable inquiries concerning the Images before acquiring, exhibiting, and publishing them amounts to gross negligence or recklessness.

**A NEW RUNNING FENCE BOOK IS PUBLISHED WITHOUT GORGONI'S KNOWLEDGE; GORGONI LEARNS OF THE UNAUTHORIZED SALE AND REPRODUCTION OF THE IMAGES**

59. In or about 2010, a new book that was to be published by the University of California Press and the Smithsonian, titled *Remembering the Running Fence* (the "Second Running Fence Book"), in conjunction with an exhibition set to take place at the Smithsonian (the "Running Fence Exhibition").

60. The Second Running Fence Book received the permission of Abrams Publishing to use text from the First Running Fence Book.

61. The Second Running Fence Book ***excludes Gorgoni*** from the list of Christo and Jeanne-Claude's "team" for the Running Fence.

62. The Smithsonian did not seek Gorgoni's permission to publish his Images in the Second Running Fence Book.

63. The Smithsonian did not contact Gorgoni to give him notice that his Images would be included in the Second Running Fence Book.

64. Nonetheless, the Smithsonian published the Images in the Second Running Fence Book.

65. At or about the same time, the Smithsonian sought to display a film that contains some of the Images (the "Film").

66. The Smithsonian did not seek Gorgoni's permission to publish his Images in the Film.

67. The Smithsonian did not contact Gorgoni to give him notice that his Images would be included in the Film.

68. Nonetheless, the Smithsonian published the Images in the Film.

69. The Smithsonian did not invite Gorgoni to the Running Fence Exhibition.

70. The Smithsonian did not contact Gorgoni to give him notice that physical copies of the Images were being displayed in the Running Fence Exhibition.

71. Upon information and belief, the reason for not doing so was that Christo knew that Gorgoni would object to the public display and reproduction of his copyrighted Images without his license or permission.

72. Gorgoni has a home in Italy and often travels there.

73. Gorgoni was not aware of the Running Fence Exhibition while it was ongoing at the Smithsonian.

74. The Running Fence Exhibition did not receive extensive media coverage in New York or Italy.

75. Gorgoni has never been in the habit of reviewing the Smithsonian's website or Christo's website.

76. Gorgoni did not review any media coverage concerning the Running Fence Exhibition during the exhibition or for years afterward.

77. Gorgoni subsequently learned of the use of some of the Images in the Second Running Fence Book.

78. Gorgoni, via his counsel, demanded that the Smithsonian and University of California Press cease any and all copying, importation, manufacture (domestic and foreign),

offering for sale, sale, distribution, advertising, promotion and display of the Second Running Fence Book.

79. In response, the Smithsonian and University of California Press advised Gorgoni that both had suspended sales of the Second Running Fence Book and that the Smithsonian had removed the Film containing some of the Images from the Smithsonian's website.

80. Gorgoni engaged in settlement discussions with Defendants for several years.

81. Gorgoni was willing, despite his right to damages and an injunction, to give a cost-free license for museum-related, noncommercial use of his Images if Defendants appropriately acknowledged his copyrights and agreed not to use the Images outside of the scope of the license without his written permission.

82. Defendants have failed to acknowledge Gorgoni's copyrights in the Images.

83. To the contrary, Defendants have claimed that Christo is the copyright owner of the Images, despite Christo's knowledge that (a) he agreed that Gorgoni was the copyright owner of the Images, (b) Gorgoni registered his copyright to the Images nearly 40 years ago, and (c) he has failed to take any action to publicly dispute or challenge Gorgoni's copyright in that time.

84. The Smithsonian had subsequently re-posted the Film on the Smithsonian's website.

85. The Smithsonian's website has reproduced copies of each of the Images.

86. The Smithsonian's website includes links to enlarged copies of the Images that are also on its website.

87. The Smithsonian's website's reproduction of the Images violates the Association of Art Museum Directors (the "AAMD") policy statement on the use of digital images, which requires museums, like the Smithsonian, to "respect the rights of artists and copyright holders to

protect the integrity of their works and to receive the benefits of the rights, including financial rights, accorded to artists."

88. The Smithsonian's website identifies Christo as the owner of the copyright to each of the Images.

89. This identification is false, and the Smithsonian knows it to be false, because the Smithsonian is aware that Gorgoni was the photographer who created the Images.

90. The Smithsonian's website infringes on Gorgoni's copyright to the Images.

91. Christo's website reproduces certain Images.

92. Christo's website identifies Christo as the owner of the copyright to the Images.

93. This identification is false, and Christo knows it to be false, because the Christo is aware that Gorgoni was the photographer who created the Images, and that Christo has agreed that Gorgoni is the copyright owner to the Images.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT– AGAINST THE SMITHSONIAN AND CHRISTO)**

94. Gorgoni repeats and realleges the allegations set forth in Paragraphs 1 through 93 above.

95. Gorgoni is the author of the Images.

96. The Images are original works of authorship.

97. The Images have been fixed in a tangible medium of expression.

98. The Images contain substantial amounts of material created by Gorgoni's own artistic judgment and creativity.

99. The Images are copyrightable subject matter under the laws of the United States.

100. At no time did Gorgoni transfer his copyright to the Images to Christo, the Corporation, or anyone else.

101. Gorgoni registered his copyright (No. Ju 14911) in the Images with the U.S. Copyright Office, effective February 11, 1977.

102. At no time since then did Christo challenge or seek to invalidate Gorgoni's copyright registration of his Images.

103. As such, Gorgoni is the rightful copyright owner to the Images.

104. Christo has wrongfully asserted that he is the copyright owner to the Images.

105. The Smithsonian has wrongfully asserted that Christo is the copyright owner to the Images.

106. Pursuant to 28 U.S.C. § 2201, this Court has the authority to decide actual controversies within its jurisdiction.

107. For the reasons stated above, there is an actual controversy between Gorgoni and Defendants.

108. Accordingly, Gorgoni is entitled to a judgment declaring him the sole owner of the copyright to the Images.

**SECOND CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT– AGAINST THE SMITHSONIAN AND CHRISTO)**

109. Gorgoni repeats and realleges the allegations set forth in Paragraphs 1 through 108 above.

110. The Images are copyrightable subject matter under the laws of the United States.

111. Gorgoni is the rightful copyright owner to the Images.

112. The Smithsonian has copied and reproduced the Images on its website.

113. The Smithsonian did not obtain Gorgoni's authorization to copy and reproduce the Images on its website.

114. The Smithsonian's unauthorized copying and reproduction of the Images on its website are infringements of Gorgoni's copyright in violation of the Copyright Act.

115. Christo has copied and reproduced the Images on his website.

116. Christo did not obtain Gorgoni's authorization to copy and reproduce the Images on his website.

117. Christo's unauthorized copying and reproduction of the Images on his website are infringements of Gorgoni's copyright in violation of the Copyright Act.

118. As a direct and proximate cause of the foregoing acts of the Smithsonian and Christo, Gorgoni has been damaged in an amount to be proved at trial.

**WHEREFORE,** Gorgoni respectfully requests that this Court enter judgment in his favor and against Defendants on this Complaint as follows:

(a) Declaring that Gorgoni is the sole copyright owner to the Images;

(b) Granting a permanent injunction prohibiting Defendants from further infringement of Gorgoni's copyright to the Images, including further reproduction of the Images, without Gorgoni's permission and proper acknowledgement of his copyright;

(c) Awarding statutory damages pursuant to the Copyright Act for each act infringement of any one of the Images or, at Gorgoni's election, actual damages, including licensing fees or reasonable royalties, and profits permitted under the Copyright Act, in an amount to be determined at trial;

(d) Awarding prejudgment interest at the maximum rate allowed by law;

(e) Awarding the allowable costs, expenses, and attorneys' fees of suit; and

(f) Awarding such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Gorgoni demands a trial by jury.

Dated: New York, New York
2017-November-21

**CAHILL COSSU NOH & ROBINSON LLP**

By: *s/ John R. Cahill*

John R. Cahill
Paul S. Cossu
70 West 40th Street, 15th Floor
New York, NY 10018
212-719-4400

*Attorneys for*
*Plaintiff Gianfranco Gorgoni*